### Leavitt, President, &c. *vs.* Stanton, President, &c.

Plaintiff was in the habit of depositing money with defendant and drawing on him. Defendant paid a draft of $10,000, with plaintiff's signature forged to it. *Held*, that the circumstances of the case were not such as would excuse defendant.

Assumpsit to recover $10,000, a balance on deposit. The defence was that plaintiff had drawn for it and the draft paid.

The plaintiff was president of the Albany Exchange Bank and the defendant of the American Exchange Bank of New York. The defendant gave in evidence the following draft or check:

No. 166.                                   " Albany Exchange Bank,
                                             Albany, Sept. 10, 1840.
    Cashier of the American Exchange Bank, N. Y., pay to
the order of Thomas Rutherford, ten thousand dollars.
                                             NOAH LEE, Cashier..
    ¨Endorsed Thomas Rutherford."
    This was presented at the defendant's bank by the bearer,
who made the endorsement in presence of the teller, and
received the money.  It was proved to have been forged
paper.  The North American Trust Company in the city of
New York had formerly been the corresponding bank of the
plaintiff, and after the substitution of the defendant the
same printed checks were used, erasing the name, and
writing over the erasure the name of the defendant's bank
in red ink.
    The counsel for defendant offered to prove, for the pur-
pose of showing that they had been misled by the negligence
and want of proper caution on the part of the plaintiff,
that the check in question came from and was cut out of
the check book of the plaintiff; that the book was kept on
the counter of the bank, in a more exposed place than ordi-
narily kept by banks.  That the words " American Exchange
Bank," in red ink, were in the handwriting of a clerk of the
bank and corresponded with other checks drawn on the de-
fendant.  That the plaintiff had issued two checks which
were genuine, payable to the order of the person calling
himself Thomas Rutherford, in August and September, 1840,
one for $3,000, the other for $5,000, before the date of the
one in question.  That the person, thus calling himself, was
an entire stranger to the defendant, and that at the time
of issuing the check of $3,000, the cashier in a letter on bu-
siness advised the cashier of defendant as follows :
    " We have sold a draft on you for $3,000 to Thos. Ruther-
ford, who requested us to send his signature to you, he
having no acquaintance in New York to introduce him.  The
signature is enclosed."  That the draft for $3,000 was paid
by the teller, at the counter, after the receipt of this letter,
to the person calling himself Rutherford, and afterwards the
draft of $5,000, and subsequently the draft of $10,000 in

like manner. That each of the drafts was paid on the credit of the letter, and with the full belief that the person presenting them was, in truth, Thomas Rutherford, and was known to the plaintiff, and was a person of good character and pecuniary credit; and that if the teller had known that he had been a stranger to the plaintiff he would not have paid any of the drafts. That it is the uniform custom of banks in New York and Albany, not to give such letters of introduction, or forward a signature in this way, without a knowledge of the character of the individual. That the person calling himself Rutherford paid the plaintiff ¼ per cent on the drafts of $3,000 and $5,000, which was unusual, and which attracted the attention of the cashier, so that, immediately after selling the said $5,000 he suspected all was not right; but did not communicate his suspicions to the defendants.

This testimony was objected to as irrelevant and immaterial; that if the draft of $10,000 was a forgery, the testimony would not make it the draft of the plaintiff, or subject them to liability on account of it, or constitute any defence to the action.

The circuit judge rejected the offer, and instructed the jury that the only question in the case was, as to the genuineness of the draft. Exception. The jury found for the plaintiff. Defendant moves for a new trial, on a bill of exceptions.

*By the Court*, NELSON, Ch. J. The jury have found, upon sufficient evidence, that the draft in question, upon which the defendant claims he has already paid the money sought to be recovered, was a forgery; and of course, of itself, affords no ground for insisting that payment has been made in pursuance of any authority from the plaintiff.

The only other ground taken arises out of the evidence offered and rejected, which is, that, assuming the draft to have been forged, yet it was presented at the bank and paid, under such a combination of circumstances (for which the plaintiff is answerable), calculated to mislead and which did in fact mislead and deceive the officers, as, when taken

altogether, are of sufficient force and effect to preclude him from denying the genuineness of the paper.

The material facts embraced in the offer bearing upon this branch of the defence, are that the check itself was one of the printed checks used by the plaintiff's bank; that part of it, to wit, the name of defendant's bank was in the hand-writing of one of the clerks; that it must have come from the check book; that the book had been kept upon the counter of the bank, an unusual place; that the cashier in a letter of advice of a check of $3,000 previously sold to the same person, on the defendant's bank, had enclosed his signature, mentioning it to have been done at his request, as he was a stranger in that city; and, finally, that in the sale of that check, and another one of $5,000, he had paid ¼ per cent premium, which had excited the suspicions of the cashier, when the last one was sold, that all was not right, which suspicions were not communicated to the defendant.

If we analyze this combination of facts and resolve them into simple elements, what are they?

1. The felon employed in his imposition upon the defendant one of the printed checks which the plaintiff's bank were in the habit of using in their dealings with the defendant. 2. The cashier in a letter of advice of the sale of a check to him, at his request, enclosed his signature, as he was a stranger in the city. 3. Suspicions of the cashier, because he paid ¼ per cent premium, which were not communicated.

The premises are, altogether, too slight and feeble for the inference sought to be drawn against the plaintiff.

It is a common practice for all the principal customers of a bank to keep on hand a printed check book, from which the checks are cut, drawn in the course of their dealings; and it would be somewhat novel and extraordinary to hold one of the customers bound for all the forged paper of the kind in his name that might happen to be imposed upon the bank, because a blank form cut from the book was used by the felon, even assuming that all due care had not been taken to prevent the use of it. The consequences, to wit, the forgery and successful imposition upon the defendant, are far too indirect and re-

mote to be chargeable upon any such neglect or carelessness, with the certainty required in legal accountability.

Besides, the facts offered to be proved fell short of gross carelessness, which should, at least, be established, if the principle could be at all entertained.

The cashier states that before the occurrence of the forged check, the check book had been kept in the teller's desk on the counter. This being the place where it usually had been kept since the bank went into operation, without any thing happening calculated to excite suspicions that it was an unsafe or improper place of deposit. The fact itself affords very slight if any evidence of negligence in the matter; certainly nothing like a gross or marked case.

Then, as to the signature enclosed and the suspicions, it is very likely the defendant's bank would have refused to honor the draft of $3,000, nothing else appearing, as the bearer was a stranger to the officers; and for this reason, I perceive no serious objection to the step taken to secure the acceptance. It is not pretended but that every fact communicated was true. The signature enclosed was the signature of the bearer to whom the draft had been sold, and was used for the purpose for which it was sent, to wit, the honor of a genuine draft. It seems to have been a simple business transaction, conducted in good faith by the plaintiff, and was in reality what it purported to be on the face of it.

There is not one word in the letter of advice in commendation of Rutherford, nor even an intimation that the cashier had any personal acquaintance with him. He stated the simple fact that his bank had sold him the draft, and that the signature was enclosed at his request, as he was a stranger in the city.

And as to the suspicions; they of course refered to the draft of $5,000, the manner of purchasing which had excited whatever suspicion existed in the mind of the cashier.

But nothing happened in respect to it, beyond what was intended or expected; it was presented as a genuine check of that amount, as it was, in the usual way, and paid.

It would be too much to hold from this, that the cashier should have anticipated the possible design of Rutherford

to commit a forgery upon the defendant, or should have foretold the offence and communicated the fact; and for neglect in doing so, charge upon him or his institution all the consequences of any forgery that might subsequently have happened.

New trial denied.